Eleni Melekou
Pardalis & Nohavicka, LLP
950 Third Avenue, 11th Floor
New York, NY 10022
Telephone: (718) 777-0400
Facsimile: (718) 777-0599
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---------------------------------------------------------

| | |
|---|---|
| EXP CORP., | ) |
| *Plaintiff*, | )    Civ. Case No. 23-cv-5480 |
| | ) |
| -v- | ) |
| JUDA OHANA, and C N H FOOD INC. | )    <u>**AMENDED COMPLAINT**</u> |
| | ) |
| *Defendants*. | )    JURY TRIAL DEMANDED |

---------------------------------------------------------

     Plaintiff, EXP Corp. ("EXP Corp" or "Plaintiff"), a New York company, by and through

its undersigned attorneys, PARDALIS & NOHAVICKA, LLP, complains and alleges against

Defendants JUDA OHANA ("Ohana" or the "Individual Defendant") and C N H FOOD INC.

("CNH" or the "Corporate Defendant") ("Ohana and CNH, collectively, the "Defendants"), as

follows:

<u>**NATURE OF ACTION**</u>

     1.    Plaintiff brings the instant action for the infringement of the "Brooklyn Lab" mark

through the unauthorized advertising, marketing, promoting, distributing, displaying, offering for

sale, and selling unlicensed infringing products bearing Plaintiff's "Brooklyn Lab" mark by

Defendants.

     2.  This action involves claims for:

    1)  Trademark infringement of Plaintiff's "Brooklyn Lab" mark in violation of

§32 of the Federal Trademark (Lanham) Act, 15 U.S.C. § 1051 et seq.;

2) Contributory Infringement;

3) False designation of origin, passing off and unfair competition in violation of Section 43(a) of the Trademark Act of 1946, as amended with 15 U.S.C. § 1125(a);

4) Common Law Trade Name, Trademark and Service Mark Infringement;

5) Trademark Dilution (N.Y. Gen Bus L. § 360-l);

6) False Labeling;

7) Federal Unfair Competition;

8) Common Law Unfair Competition;

9) Unjust Enrichment;

10) Deceptive Acts and Practices (N.Y. Gen Bus L. § 349); and

11) Declaratory Judgment.

3. Since July 30 2020, Plaintiff has been continuously and exclusively using the "Brooklyn Lab" mark in the New York Metropolitan Area, namely Manhattan, Brooklyn, Queens, Long Island, New Jersey, and Pennsylvania, in connection with coffee, coffee products and services and its coffee business.

4. Plaintiff has expended substantial time, money and resources successfully developing, promoting, and advertising its "Brooklyn Lab" brand.

5. Through its efforts, and as result of EXP Corp's continuous and extensive use of its "Brooklyn Lab" mark, the "Brooklyn Lab" brand is a successful coffee business, and its "Brooklyn Lab" mark has become exclusively associated with EXP Corp.

6. Defendant Ohana claimed to be the owner of a putative "Brooklyn Lab" mark after Plaintiff introduced the "Brooklyn Lab" mark in commerce.

7.     Defendant Ohana claimed to be the owner of a putative "Brooklyn Lab" mark after Plaintiff sought to register the "Brooklyn Lab" mark with the United States Patent and Trademark Office ("USPTO").

8.     Despite Plaintiff's established rights in the "Brooklyn Lab" mark, Defendant Ohana asserted in documents filed on May 18, 2023 with the Trademark Trial and Appeal Board ("TTAB") that he started operating a competing coffee business under the brand name "Brooklyn Lab" in Brooklyn, New York, targeting the same customers, and spreading false allegations that the "Brooklyn Lab" brand is owed by Ohana.

9.      After Plaintiff introduced the "Brooklyn Lab" mark in commerce and sought to register it with the USPTO, Defendant Ohana, claimed to have granted some kind of license to Defendant CNH to use the mark "Brooklyn Lab."

10.    Upon information and belief, there is no documentation or other recording of any putative license from Ohana to CNH concerning any putative "Brooklyn Lab" mark.

11.    Upon information and belief, CNH is owned and operated by relatives of Ohana, including Ohana's father and brother.

12.    Upon information and belief, CNH is engaged in the supply and distribution of food and beverages.

13.    Upon information and belief, the Defendants offer, market, sell and distribute infringing "Brooklyn Lab" products.

14.    Upon information and belief, Defendant Ohana offers, markets, sells and distributes infringing "Brooklyn Lab" products through CNH.

15.    As a result of Defendants' wrongful conduct, Plaintiff has been damaged and brings this action for monetary and injunctive relief.

## THE PARTIES

5.      Plaintiff EXP Corp. is a New York Domestic Business Corporation, formed and existing under the laws of the State of New York, with a principal place of business located at 2813 11th Street, Flushing, NY 11354, in Queens County, within the Eastern District of New York.

6.      Upon information and belief, Defendant Ohana is an individual residing and conducting business at 383 Kingston Avenue, Suite 58 Brooklyn, New York 11213.

7.      Upon information and belief, Defendant CNH is a New York Domestic Business Corporation, formed and existing under the laws of the State of New York, with a principal place of business located at 431 Kingston Avenue, Brooklyn, New York, 11225, in Kings County, within the Eastern District of New York.

## JURISDICTION AND VENUE
### Federal Question Jurisdiction and Supplemental Jurisdiction

7.      This action arises under the Lanham Act, 15 U.S.C. § 1051, et seq. and the statutory and common laws of the State of New York. This Court has subject matter jurisdiction over this action over Plaintiff's federal claims pursuant to and in accordance with 28 U.S.C. §1331 and 1338(a).

8.      This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to and in accordance with 28 U.S.C. §§ 1367(a), because those state and common law claims are so related to the claims within the original jurisdiction of the Court that they form part of the same case or controversy under Article III of the United States Constitution.

9.      Personal jurisdiction exists over Defendants in this judicial district pursuant to Fed. R. Civ. P. 4 and NY C.P.L.R. 301, since the Defendants reside and/or conduct their businesses in the State of New York

10. Venue is proper in this District under 28 U.S.C. §§ 1391(b) and (c), because at least one defendant resides in the Eastern District of New York and a substantial part of the events or omissions giving rise to the claims raised in this complaint occurred within this judicial district.

## **FACTUAL ALLEGATIONS APPLICABLE TO ALL CLAIMS**

11. Among other products, EXP Corp markets, sells, and distributes various coffee and coffee products from various coffee brands, including those that it roasts in house, as well as others sourced from third-party coffee producers and coffee roasters.

12. In or around May 2020, EXP Corp established and started promoting a coffee brand under the mark "Brooklyn Lab."

13. In or around June 2020, EXP Corp established a website and an online store to promote and sell its "Brooklyn Lab" coffee and coffee products (https://Brooklynlabcoffee.com).

14. On or around July 30, 2020, EXP Corp sold its first "Brooklyn Lab" products.

15. "Brooklyn Lab" was not a mark registered with the USPTO at that time.

16. Plaintiff independently created the design, logo, and package of the "Brooklyn Lab" products in or around May 2020.

17. Plaintiff has continually used its "Brooklyn Lab" mark in connection with its coffee business and products in United States commerce since at least June 2020.

18. Plaintiff engaged in substantial advertising and promotion, and has expended substantial time, money and resources successfully developing and promoting the "Brooklyn Lab" mark and its coffee business and products under that name.

19. In addition to continuous and uninterrupted use in commerce, on January 13, 2021, Plaintiff applied to register the "Brooklyn Lab" mark with the USPTO, in connection with coffee, coffee beans, tortilla chips and granola (Serial Number: 90462963). [**Exhibit 1**]

20.     EXP Corp's USPTO Trademark application inadvertently stated that Plaintiff had made first use of its "Brooklyn Lab" mark in commerce on September 1, 2020. However, Plaintiff started using the mark by establishing an online shop and acquiring the domain name for the "Brooklyn Lab" mark in May 2020.

21.     EXP Corp.'s use of its "Brooklyn Lab" mark in commerce prior to the inadvertently denoted September 2020 date can be demonstrated by documentary and physical evidence.

22.     Plaintiff has expended substantial time, money and resources successfully developing, promoting, and advertising its "Brooklyn Lab" mark.

23.     Plaintiff spent substantial sums of money in promoting its "Brooklyn Lab" mark on various social media platforms, such as Instagram and Facebook, through Google Ads, and by participating in tradeshows, offering samples, seasonal promotions, and discounts to customers.

24.     In the course of these years, Plaintiff has served thousands of customers in U.S. commerce, among others, in the States of New York, New Jersey and Pennsylvania offering for sale, selling, and distributing its coffee products under its "Brooklyn Lab" mark.

25.     Plaintiff has used the "Brooklyn Lab" mark continuously and exclusively and distinguishes itself among the other coffee products and similar products.

26.     As a result, Plaintiff's "Brooklyn Lab" mark has become an extremely valuable asset for Plaintiff.

27.     Plaintiff's "Brooklyn Lab" brand distinguishes itself among other regional coffee brands by, *inter alia*, offering organic coffee.

28.     Both Ohana's and CNH's conduct is targeted to appropriate and trade off Plaintiff's goodwill, reputation, and success by unfair means.

**Defendants' Infringing Activities**

29.     On October 30, 2020, Defendant Ohana filed an application with the USPTO to register "brooklyn labr" as his own mark. [**Exhibit 2**].

30.     In his application with the USPTO, Defendant Ohana filed no specimens. (*Id.*)

31.      Ohana abandoned his application.

32.     In his USPTO application, Defendant Ohana did not claim a date as the first date that he allegedly had made the first use of the infringing mark in commerce. (*Id.*).

33.     Despite Plaintiff's rights in the "Brooklyn Lab" mark, Defendant Ohana later claimed that in applying for the "brooklyn labr" mark, he then intended to register "Brooklyn Lab" as his own mark (Serial Number: 90290520).

34.     While Plaintiff's January 13, 2021 application to register its "Brooklyn Lab" mark was pending before USPTO (Ex.1), on April 6, 2022, Defendant Ohana filed an application to register an infringing "Brooklyn Lab" mark with the USPTO in connection with the same product category as Plaintiff, namely coffee, coffee beans. Tortilla chips and granola (Serial Number: 97349782). [**Exhibit 3**]

35.     Defendant Ohana filed his April 6, 2022 application to register an infringing "Brooklyn Lab" mark on an intent-to-use basis under Trademark Act Section 1(b), indicating that Defendant Ohana lacked any evidence or specimens showing any pre-existing use of the infringing "Brooklyn Lab" mark in U.S. commerce.

36.     Defendant Ohana's April 6, 2022 trademark application claiming an intent-to-use the "Brooklyn Lab" mark demonstrated only Defendant Ohana's then intention to use the"Brooklyn Lab" as a mark in the near future.

37.     When Plaintiff submitted its January 13, 2021 Trademark application with the USPTO, it had already been using its Brooklyn Lab" mark in commerce since 2000.

38.      Defendant Ohana's April 6, 2022 trademark application claiming an intent-to-use the "Brooklyn Lab" mark did not and does not establish Defendant Ohana's rights in the "Brooklyn Lab" mark.

39.      Defendant Ohana's April 6, 2022 trademark application claiming an intent-to-use the "Brooklyn Lab" mark did not and does not establish or provide Defendant CNH with any rights in the "Brooklyn Lab" mark.

40.     By his own admission by way of its USPTO Trademark application, Defendant Ohana had not yet used, caused to be used, or permitted the use of any "Brooklyn Lab" mark in commerce as of April 6, 2022, and at that time only expressed an intention to subsequently use it.

41.     The USPTO trademark examiner suspended Defendant Ohana's intent-to-use trademark application on the grounds that there is likelihood of confusion with Plaintiff's prior-filed mark. [**Exhibit 4**]

42.     On March 21, 2023, USPTO published Plaintiff's trademark application for opposition in the USPTO Trademark Official Gazette. [**Exhibit 5**].

43.     On May 18, 2023, Defendant Ohana filed a Notice of Opposition with the TTAB concerning Plaintiff's "Brooklyn Lab" mark (TTAB Opposition Number 90462963). [**Exhibit 6**].

44.     In his opposition, Defendant Ohana stated claimed that he had started using the "Brooklyn Lab" mark in connection with coffee related products in 2015 and, that in 2020, Ohana had given Plaintiff "some products for distribution." (*Id.*).

45.     Ohana failed to submit any exhibits in support of its opposition. (*Id.*).

46. Defendant Ohana had submitted two prior unsuccessful applications with the USPTO, one of them with an intent-to-use basis which, on its face, shows that he had not and has not been using the "Brooklyn Lab" mark since 2015, as he has claimed.

47. Indeed, on April 6, 2022, Defendant Ohana affirmatively claimed to the USPTO that he first intended to use "Brooklyn Lab" as a mark in the then near future. (Ex. 3).

48. EXP Corp has never distributed any coffee-related products from a third-party vendor or supplier under the "Brooklyn Lab" mark or a "Brooklyn Lab" brand name.

49. The "Brooklyn Lab" brand and mark was created by Plaintiff in May 2020 and was used exclusively by Plaintiff in connection with Plaintiff's coffee-related products.

50. EXP. Corp made no false claims or oath in connection with its application to register its "Brooklyn Lab" mark with the USPTO.

51. Defendants are associated with a coffee product branded "Brooklyn's Own."

52. Plaintiff distributed Defendants' "Brooklyn's Own" coffee products from May to September 2020.

53. In September 2020, Defendants increased the price to Plaintiff to purchase "Brooklyn's Own" branded coffee products for resale,

54. Plaintiff decided to cease its distribution of the Defendants' "Brooklyn's Own" branded coffee because Defendants' price increase rendered it unprofitable.

55. It was not until approximately a month after EXP Corp ceased its distribution of the Defendants' "Brooklyn's Own" branded products that Defendant Ohana applied to register the "Brooklyn Lab" mark with the USPTO, then falsely representing that he owned the "Brooklyn Lab" mark.

56.     The Defendants knew that the Plaintiff was marketing, selling, and distributing "Brooklyn Lab" branded coffee with packaging displaying the "Brooklyn Lab" mark.

57.     Upon information and belief, Defendants had actual knowledge of Plaintiff's prior superior rights in the "Brooklyn Lab."

58.     Upon information and belief, the Defendants are using the trademark registration, prosecution, and opposition process in place at and with the USPTO in an effort to get a piece of Plaintiff's successful business.

59.     Upon information and belief, the Defendants are using the litigation process in an effort to get a piece of Plaintiff's successful business.

60.     Defendant Ohana's opposition is a brazen attempt to interfere with and cause damage to Plaintiff's successful coffee business and "Brooklyn Lab" brand.

61.     Upon information and belief, on April 6, 2022, Defendant Ohana applied for to register the Plaintiff's "Brooklyn Lab" mark in retaliation for Plaintiff's business decision to stop distributing the Defendants' "Brooklyn's Own" branded coffee.

62.     As the Defendants' offer, market, sell and distribute products and services in New York that are directly competitive with the Plaintiff, by selling coffee-related products under the "Brooklyn Lab" mark, Defendants have engaged in an infringing activity and unfair competition despite having actual knowledge of Plaintiff's intellectual property rights and use of the "Brooklyn Lab" mark.

63.     Defendants' use of the infringing "Brooklyn Lab" mark postdates Plaintiff's first use of the "Brooklyn Lab" mark.

64.     Plaintiff never authorized Defendants to use the "Brooklyn Lab" mark.

65.     No license or other relevant understanding or arrangement exists between Plaintiff and Defendants concerning or related to the Plaintiff's "Brooklyn Lab" mark.

66.     Upon information and belief, Defendants have gained or intend to gain substantial profits by capitalizing on the goodwill of Plaintiff's "Brooklyn Lab" mark.

67.     Defendants' infringing use of the "Brooklyn Lab" mark is directly competitive with Plaintiff's use of its "Brooklyn Lab" mark in connection with coffee products and services and its coffee business.

68.     Since the two marks are identical, Defendants' use of Plaintiff's "Brooklyn Lab" mark has caused or is likely to cause confusion, mistake, and deception as to the source of Defendants' services and Defendant's affiliation with Plaintiff.

69.     Upon information and belief, Defendants use the "Brooklyn Lab" mark with the purpose of confusing and misleading consumers into believing that they are purchasing services associated with or endorsed by Plaintiff or are somehow connected with Plaintiff's "Brooklyn Lab" brand.

70.     Defendants traded off Plaintiff's goodwill and reputation by engaging in the unauthorized use of Plaintiff's rights in the "Brooklyn Lab" mark.

**FIRST CAUSE OF ACTION**
**Federal Trademark Infringement of Plaintiff's "Brooklyn Lab" Mark**
**[15 U.S.C. § 1114/Lanham Act § 32(a)]**

71.     Plaintiff incorporates by reference each and every allegation in the foregoing paragraphs of this Complaint.

72.     Since July 2020, EXP Corp has continuously and extensively used the "Brooklyn Lab" mark in commerce and has built its reputation under the same mark. [**Exhibit 7**]

73.     Defendants made unauthorized use of the "Brooklyn Lab" mark for coffee products and services, which are directly competitive with Plaintiff's products and services under the "Brooklyn Lab" mark.

74.     Defendants' unauthorized use of the "Brooklyn Lab" mark has caused confusion, mistake, and deception as to the source, sponsorship, or approval of Defendants' products and services and/or result in the mistaken belief that Defendants are somehow legitimately affiliated, connected or associated with Plaintiff.

75.     Defendants' aforesaid acts, specifically Defendants' unlawful misappropriation of Plaintiff's "Brooklyn Lab" mark, constitute willful trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114.

76.     By reason of Defendants' aforesaid acts, Plaintiff has suffered and will continue to suffer damage and injury to its business reputation and goodwill and will sustain loss of revenue and profits.

77.     Unless enjoined by this Court, Defendants will potentially continue to perform the acts complained of herein and cause said damages and injury, all to the immediate and irreparable harm of and to Plaintiff.

78.     Plaintiff has no adequate remedy at law to prevent the Defendants from continuing their unlawful acts.

**<u>SECOND CAUSE OF ACTION</u>**
**Contributory Infringement**

79.     Plaintiffs incorporates by reference each and every allegation in the foregoing paragraphs of this Complaint.

80.     By his purported license to CNH, his family's business, Ohana intentionally induced and continues to induce CNH to infringe Plaintiff's intellectual property.

81.   Defendant Ohana represents that he continues to license to CNH.

82.   Any such putative licensing and use agreements amongst and between Defendants Ohana and CNH are with knowledge that the Defendants are engaging in trademark infringement by selling coffee products branded and bearing Plaintiff's "Brooklyn Lab" mark.

83.   Defendants are liable as contributory copyright infringers for the infringing acts of other third parties, such as other suppliers and sellers of coffee bearing Plaintiff's "Brooklyn Lab" mark.

84.   Upon information and belief, Defendants have enabled, induced, facilitated, and materially contributed to each act of infringement by other distributors, suppliers and sellers, that distributed or used the infringing products.

85.   Any infringement committed by any third party could not have occurred without Defendants' wrongdoing.

86.   Defendants' acts of contributory infringement were willful, intentional and in disregard of Plaintiff's intellectual property rights in the "Brooklyn Lab" brand and mark.

87.   As a direct and proximate result of Defendants' infringement of Plaintiff's intellectual property rights, Plaintiff shall be entitled to his actual damages plus Defendants' profits from infringement, as will be proven at trial.

### THIRD CAUSE OF ACTION
### False designation of Origin, Passing Off and Unfair Competition
### [15 U.S.C § 1125(a)/Lanham Act § 43(a)]

88.   Plaintiff incorporates by reference each and every allegation in the foregoing paragraphs of this Complaint.

89.   Plaintiff as the owner of all right, title and interest in and to the "Brooklyn Lab" mark.

90.     As owner of the "Brooklyn Lab" mark, Plaintiff has standing to maintain an action for false designation of origin and unfair competition under Lanham Act § 43(a) (15 U.S.C. § 1125).

91.     Since at least July 2020, Plaintiff has continuously and extensively provided services and sold coffee products under its "Brooklyn Lab" mark in New York, New Jersey and Pennsylvania.

92.     Plaintiff's "Brooklyn Lab" mark is inherently distinctive.

93.     As a result of Plaintiff's continuous use of the "Brooklyn Lab" mark in connection with coffee products and services, and its coffee business, the "Brooklyn Lab" mark has become recognized among consumers in New York, New Jersey and Pennsylvania as a source-identifier of Plaintiff's services and coffee business.

94.     Defendants' unauthorized use of Plaintiff's "Brooklyn Lab" mark in connection with the exact same category of coffee products as marketed, sold and distributed by Plaintiff, has caused confusion, mistake, and deception as to the source, sponsorship, or approval of Defendants' products by Plaintiff and results in the mistaken belief that Defendants and their product or services are somehow legitimately affiliated, connected or associated with Plaintiff.

95.     By designing, advertising, marketing, promoting, distributing, offering for sale or otherwise dealing with the infringing "Brooklyn Lab" mark, Defendants have traded off the goodwill of Plaintiff and its services, thereby directly and unfairly competing with Plaintiff.

96.     Defendants knew that the use of Plaintiff's "Brooklyn Lab" mark in relation to their coffee products and coffee business would cause confusion, mistake and deception among consumers and the public.

Defendants' aforesaid acts constitute willful unfair competition with Plaintiff, in violation of the Lanham Act, 15 U.S.C. § 1125 (a).

97. Upon information and belief, Defendants' aforementioned wrongful actions have been knowing, deliberate, willful, intended to cause confusion, to cause mistake and to deceive consumers and were performed with the intent to trade on the goodwill and reputation of Plaintiff.

98. By reason of Defendants' aforesaid acts, Plaintiff has suffered and will continue to suffer damage and injury to its business, reputation, and goodwill, and will sustain loss of revenue and profits.

99. Unless enjoined by this Court, Defendants will continue to perform the acts complained of herein and cause said damages and injury, all to the immediate and irreparable harm of Plaintiff.

100. Plaintiff has no adequate remedy at law to prevent the Defendants from continuing their unlawful acts.

## FOURTH CAUSE OF ACTION
### Common Law Trade Name, Trademark Infringement

101. Plaintiff incorporates by reference each and every allegation in the foregoing paragraphs of this Complaint.

102. Plaintiff has established and enjoys common law trade name and trademark rights in the "Brooklyn Lab" mark in connection with coffee products and services and related services, through continuous, extensive, and uninterrupted use of the "Brooklyn Lab" mark in commerce since July 2020.

103. By its wrongful acts, Defendants have caused, and unless restrained by this Court, will continue to cause, serious and irreparable injury and damage to Plaintiff and to the goodwill, reputation and proven business success associated with the "Brooklyn Lab" mark.

104. Upon information and belief, Defendants have profited and will profit by their conduct and activities.

105. Upon information and belief, Defendants' conduct complained of herein is malicious, fraudulent, deliberate, and/or willful.

106. Plaintiff has no adequate remedy at law to prevent the Defendants from continuing their unlawful acts.

**FIFTH CAUSE OF ACTION**
**Trademark Dilution, Blurring, Tarnishing, and**
**Likelihood of Injury to Business Reputation**
**[N.Y. Gen Bus L. § 360-l]**

107. Plaintiffs hereby incorporate by reference and reallege each and every allegation above.

108. Under New York state law dilution is available if: (1) the mark has "selling power" or, in other words, a distinctive quality; and (2) the two marks are substantially similar. *Mead Data Central, Inc. v. Toyota Motor Sales, U.S.A.,* Inc., 875 F.2d 1026 (2d Cir. 1989).

109. Plaintiff is the owner of the "Brooklyn Lab" mark in connection with coffee, coffee products, services, and other related services.

110. Through prominent, long, and continuous use in commerce, the Plaintiff's "Brooklyn Lab" mark has become and continue to be famous and distinctive.

111. Upon information and belief, Defendants' coffee products branded under the putative "Brooklyn Lab" mark is of lower quality and/or substandard.

112.     Upon information and belief, Defendant's alleged "Brooklyn Lab" brand lacks any distinctiveness, and fails to identify Ohana or CNH as its source.

113.     By the acts described above, the Defendants have diluted the distinctiveness of the famous "Brooklyn Lab" mark and caused a likelihood of harm to Plaintiff's business reputation in violation of Section 360-1 of the New York General Business Law.

114.     Defendants' wrongful acts will continue unless enjoined by this Court, pursuant to N.Y. Gen. Bus. L. § 360-1.

115.     Defendants' acts have caused and will continue to cause, irreparable injury to Plaintiffs.

116.     Plaintiff has no adequate remedy at law to prevent the Defendants from continuing their unlawful acts and is thus damaged in an amount to be determined at trial.

**SIXTH CAUSE OF ACTION**
**False Labeling in Violation of the Lanham Act**

117.     Plaintiff incorporates by reference each and every allegation in the foregoing paragraphs of this Complaint.

118.     Defendant has used the Plaintiff's "Brooklyn Lab" mark in order to promote, distribute, offer for sale, and sell his products, *inter alia*, by labeling such products with the "Brooklyn Lab" mark.

119.     Defendant's actions constitute a direct violation of Plaintiff's trademark rights in the "Brooklyn Lab" mark.

120.     Plaintiff is sole owner of the "Brooklyn Lab" mark in connection with coffee products and services and a coffee business.

121. Defendants' false labeling has caused confusion, mistake, and deception among buyers and all purchasers of the "Brooklyn Lab" products as to Defendants' affiliation, connection, or association with Plaintiff and Plaintiff's authorized distributors and third-party sellers.

122. The false trade statements have also caused confusion, mistake, and deception among buyers of the Defendant's infringing products and all purchasers of the "Brooklyn Lab" brand products as to the origin, sponsorship, approval, or endorsement by Plaintiff of the above-pled infringing goods.

123. By setting forth the false labeling on the infringing goods, and as pled above in this complaint, Defendants have proximately contributed to the harm that Plaintiff has suffered.

124. Defendants have therefore committed an actionable wrong under 15 U.S.C. § 1125(a)(1)(A) and are liable to Plaintiff for such remedies as are afforded it under 15 U.S.C. §§ 1117 and 1125(a)(1).

### SIXTH SEVENTH CAUSE OF ACTION
**Federal Unfair Competition**
**[15 U.S.C. § 1125(a)]**

125. Plaintiff incorporates by reference each and every allegation in the foregoing paragraphs of this Complaint.

126. Plaintiff as the owner of all right, title and interest in and to the "Brooklyn Lab" mark, has standing to maintain an action for false designation of origin and unfair competition under the Federal Trademark Statute, Lanham Act § 43(a) (15 U.S.C. § 1125).

127. Defendants' unauthorized use of the "Brooklyn Lab" mark, in connection with services that are identical or nearly identical to those Plaintiff provides, as hereinabove alleged, constitutes a use in interstate commerce and a false designation of origin or false and misleading description or representation of goods and services in commerce, with knowledge of the falsity,

which is likely to cause confusion, mistake, and deception, and in commercial advertising and promotion, misrepresents the nature, characteristics, qualities, and origin of Defendants' commercial activities, within the meaning and in violation of 15 U.S.C. § 1125(a).

128. Defendants' unlawful acts in appropriating rights in the "Brooklyn Lab" mark are and were intended to co-opt Plaintiff's goodwill for Defendants' own pecuniary gain.

129. Defendants' labeling is misleading as it fails to identify Ohana or CNH as the source of origin of the infringing "Brooklyn Lab" products.

130. Defendants' misleading labeling was used in commerce in the context of commercial advertising and promotion of their infringing products.

131. Defendants' misleading labeling is material as it would affect the purchasing decision of a reasonable consumer.

132. Defendant's use of the "Brooklyn Lab" mark has caused and is likely to cause confusion and, unless enjoined, is likely to lead consumers to the mistaken belief that Defendants' products and services originate from or are in some way associated with, affiliated with, connected to, related to, or sponsored or approved by Plaintiff, or in the alternative, is likely to lead consumers to mistakenly believe that Plaintiff's services originate from or are in some way associated with, affiliated with, connected to, related to, or sponsored or approved by Defendants.

133. Plaintiff does not and has never sponsored or approved or authorized Defendants' use of the "Brooklyn Lab" mark.

134. The aforesaid and continuing acts of Defendants infringe Plaintiff's intellectual property and constitute unfair competition in violation of 15 U.S.C. § 1125(a).

135. Plaintiff has been damaged by said infringement and unfair competition and has no adequate remedy at law to prevent the Defendants from continuing their unlawful acts.

136.     Plaintiff is entitled to an injunction restraining Defendant from engaging in further acts of unfair competition.

137.     Unless enjoined, Defendants' continuing unfair competition practices will cause irreparable harm to Plaintiff.

138.     Plaintiff is further entitled to recover from Defendants the actual damages that it sustained and/or is likely to sustain as a result of Defendants' wrongful acts.

139.     Defendants' action is nothing more than to capitalize on Plaintiff's goodwill and successful business.

140.     Plaintiff is further entitled to recover from Defendants the gains, profits, and advantages that Defendants have obtained as a result of their willful wrongful acts, together with exemplary damages under the common law, and treble damages, increased profits, and its reasonable attorneys' fees under 15 U.S.C. § 1117.

## EIGHTH CAUSE OF ACTION
**Common Law Unfair Competition**

141.     Plaintiff incorporates by reference each and every allegation in the foregoing paragraphs of this Complaint.

142.     Defendant's aforesaid activities constitute deliberate passing off, unfair competition, misappropriation, unjust enrichment, unfair and fraudulent business practices, and misuse of Plaintiff's "Brooklyn Lab" mark under the common law of the State of New York.

143.     Upon information and belief, Defendants' conduct is willful, deliberate, intentional, and in bad faith.

144.     By reason of Defendants' aforesaid acts, Plaintiff has suffered and will continue to suffer damage and injury to its business, reputation and goodwill, and will sustain loss of revenues and profits.

145.    Unless and until enjoined by this Court, Defendants will continue to perform the acts complained herein and cause said damages and injury, all to the immediate and irreparable harm of Plaintiff.

146.    Plaintiff has no adequate remedy at law to prevent the Defendants from continuing their unlawful acts.

## NINTH CAUSE OF ACTION
### Unjust Enrichment

147.    Plaintiff incorporates by reference each and every allegation in the foregoing paragraphs of this Complaint.

148.    By virtue of the egregious and illegal acts of Defendants as described herein, Defendants have been unjustly enriched in an amount to be proven at trial.

149.    Defendants' retention of monies gained through their deceptive business practices, infringement, acts of deceit, and otherwise would serve to unjustly enrich Defendants and would be contrary to the interests of justice.

## TENTH CAUSE OF ACTION
### Deceptive Acts and Unfair Trade Practices
### [N.Y. Gen Bus L. § 349]

150.    Plaintiff incorporates by reference each and every allegation in the foregoing paragraphs of this Complaint.

151.    Defendants' activities consist of deceptive acts and practices in the conduct of its business.

152.    Defendants' aforementioned deceptive acts are aimed at consumers, and are materially misleading with respect to the source, sponsorship, and affiliation or approval of

Defendants' activities, and/or falsely suggest that Defendants are somehow legitimately affiliated, connected, or associated with Plaintiff.

153.     The aforementioned consumer confusion could lead to a potential danger to the public health since Defendant' packaging is devoid of any reference to Ohana or CNH.

154.     Defendants have failed to show any indication that Defendants' facilities are USDA inspected or approved, or whether Defendants hold certifications for their allegedly "organic" products.

155.     Upon information and belief, Defendants' products under the infringing "Brooklyn Lab" are of lower quality than Plaintiff's Brooklyn Lab" branded products that bear the Plaintiff's "Brooklyn Lab" mark.

156.     In the event of a consumer having a claim against Ohana and CNH after consuming Defendant's infringing products, that consumer will likely turn against Plaintiff.

157.     It is in the public interest that the Court enjoin the distribution and sale of Defendants' infringing "Brooklyn Lab" products.

158.     The consuming public has a protectable interest in being free from confusion, deception and mistake.

159.     Plaintiff has been, and will continue to be, damaged by Defendants' deceptive acts and practices in an amount to be determined at trial.

160.     Defendants have caused, and will continue to cause, irreparable injury to Plaintiff and to the public unless restrained by this Court, pursuant to N.Y. Gen. Bus. L. § 349.

## ELEVENTH CAUSE OF ACTION
### Declaratory Judgment of Non-Infringement

118.     Plaintiff hereby incorporates by reference and realleges each and every allegation above.

119. In his opposition for the registration of Plaintiff's "Brooklyn Lab" mark, Defendants alleged grounds for opposition based on fraud in Plaintiff's application with the USPTO for the registration of the "Brooklyn Lab" mark.

120. By this lawsuit, Plaintiff is seeking a declaration that the "Brooklyn Lab" mark is owned exclusively by Plaintiff, Plaintiff has exclusive rights in the "Brooklyn Lab" mark in connection with coffee products, services and its coffee services, there was no fraud in Plaintiff's application with the USPTO for the registration of the "Brooklyn Lab" mark, Plaintiff has not and is not infringing Ohana's intellectual property rights, and Plaintiff's sales are not connected with Ohana's alleged intellectual property, if any

121. Further, Plaintiff is seeking a declaration that neither Ohana nor CNH have rights in the "Brooklyn Lab" mark and his opposition was intended to maliciously interfere with Plaintiff's successful coffee business, cause pecuniary harm and compete unlawfully against Plaintiff.

122. As a result of Defendants' aforementioned actions, Plaintiff has suffered and continue to suffer damages, in an amount to be determined at trial.

123. Given Defendants' egregious conduct, Plaintiff is also entitled to collect punitive damages based on Defendants' infringing activities and unfair competition.

124. Plaintiff is further entitled to collect pre-and post-judgment interest together with their reasonable attorney's fees and legal costs.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff requests that this Court enter judgment in its favor and against Defendants on all its claims and award the following to Plaintiff:

1. Preliminary and permanent injunctive relief enjoining Defendants and their agents, attorneys, employees, and all others in active concern or participation with them from:

       (a) any further acts of infringement of Plaintiff's intellectual property rights and in the "Brooklyn Lab" mark.

       (b) using the "Brooklyn Lab" mark unless expressly and specifically authorized by Plaintiffs;

2. An order, pursuant to 15 U.S.C. § 1116 (a), directing Defendants to file with the Court and serve on counsel for Plaintiff within thirty (30) days after the entry of injunction issued by this Court, a sworn statement setting forth in detail the manner and form in which Defendants have complied with the injunction;

3. The following damages:

       (a) All monetary actual and/or statutory damages sustained and to be sustained by Plaintiff as a consequence of Defendants' unlawful conduct, in an amount to be determined at trial, said amount to be trebled pursuant to 15 U.S.C. § 1117 N.Y. Gen. Bus. L. §349, N.Y. Gen. Bus. L. § 360-m, and/or any other applicable statute;

       (b) All exemplary and/or punitive damages to which Plaintiffs are entitled under statutory or common law;

       (c) Pre-judgement interest according to law;

       (d) Plaintiff's reasonable attorney's fees, pursuant to 15 U.S.C. § 1117, N.Y. Gen. Bus. L. § 349, N.Y. Gen. Bus. L. § 360-m, and/or any other applicable statute, together with the costs and disbursements of this action; and

4. Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial.

Dated: New York, New York
       March 27, 2024

Respectfully submitted,

**PARDALIS & NOHAVICKA, LLP**

By: /s/Eleni Melekou
Eleni Melekou, Esq.
*Attorneys for Plaintiff*
950 Third Avenue, 11th Floor
New York, NY 10022
Tel.: (718) 777 0400
Fax: (718) 777 0599
Eleni@pnlawyers.com